[No. F029122. Fifth Dist. June 9, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD J. GREEN, Defendant and Appellant.

**COUNSEL**

Catherine Aragon, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Margaret Venturi and Susan J. Orton, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**DIBIASO, Acting P. J.**—The trial court denied appellant's motion to strike his prior Texas murder conviction. We hold that a defendant may not collaterally attack a prior out-of-state conviction on *Boykin/Tahl*[1] grounds in the absence of evidence that the convicting jurisdiction required *Tahl*-like procedural formalities.

---

[1] *Boykin v. Alabama* (1969) 395 U.S. 238 [89 S.Ct. 1709, 23 L.Ed.2d 274] (*Boykin*) and *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449] (*Tahl*).

## STATEMENT OF THE CASE

On April 29, 1996, appellant Donald J. Green was charged by information filed in Stanislaus County Superior Court with a violation of Vehicle Code section 20001 (failure to stop at the scene of an accident resulting in injury or death). The information further alleged that, during the commission of the offense, appellant inflicted great bodily injury (Pen. Code, § 12022.7). In addition, the information alleged appellant had suffered a 1978 serious felony conviction for murder in the state of Texas, within the meaning of Penal Code sections 667, subdivision (d) and 1192.7, subdivision (c).

On June 21, 1996, appellant's motion to strike the great bodily injury allegation was granted. On May 2, 1997, appellant's motion to strike the prior felony conviction, on the ground it was obtained in violation of *Boykin/Tahl*, was heard and denied. Thereafter, appellant admitted the prior conviction allegation and the matter proceeded to jury trial on the charged offense. The jury returned with its verdict of guilty on May 9, 1997. Appellant was sentenced on July 24, 1997, to a total term of four years (the midterm doubled) in state prison.

## STATEMENT OF FACTS

*Charged Offense:*

The facts of the charged offense are uncontested on appeal. In brief, on February 25, 1996, appellant, while driving his truck in Riverbank, California, struck a 75-year-old pedestrian. The pedestrian later died from his injuries. Appellant failed to stop, although he heard a "thump." According to witnesses, appellant drove into a nearby minimart and through an alley back to the scene, paused briefly while others attended to the victim, and then drove off. Appellant claimed he returned to the scene after hearing the "thump" in an attempt to see if he had hit someone, but saw nothing.

*Prior Conviction:*

In 1978, when appellant was 17 years old, he entered a plea of guilty to the murder of Larry Walker. Walker was stabbed to death during a gathering in a trailer house. Appellant and Walker had been socializing with friends and both had been drinking. Earlier, the two had exchanged "words." Appellant was very angry with Walker, although the reason is not disclosed in the record. Walker was extremely intoxicated, to the point where he could not defend himself, when he was killed. There were several eyewitnesses to the murder. Appellant left the scene and was picked up by law enforcement

shortly thereafter. He had blood all over him and carried a buck knife, which later proved to be the murder weapon.

Appellant was represented in the Texas proceeding by counsel who, in a declaration filed in this case by the People in response to the motion to strike, stated that appellant had been advised of his constitutional rights. Appellant entered a plea of guilty and then, according to Texas procedure, the case was submitted to the jury for the purpose of imposing a penalty. The jury heard the testimony of the witnesses and other evidence before settling on a term of 60 years. The reporter's transcript of the plea proceeding does not show that the Texas trial court obtained knowing and intelligent waivers from appellant of the constitutional rights enumerated in *In re Tahl, supra,* 1 Cal.3d 122.

## DISCUSSION

■ Appellant claims his motion to strike the prior conviction should have been granted because the Texas conviction is constitutionally infirm and because equal protection requires he be permitted to attack that prior conviction collaterally. Respondent argues the language in *People v. Allen* (1999) 21 Cal.4th 424 [87 Cal.Rptr.2d 682, 981 P.2d 525] (*Allen*) authorizing collateral attacks on prior convictions used as sentence enhancements is dicta and, in any event, this court should adopt the analysis of the concurring opinion in *Allen* and sanction *Boykin/Tahl* challenges to prior out-of-state convictions only if it is shown that *Tahl*-like procedures were in place in the foreign jurisdiction when the conviction was entered.

A brief background is helpful. In *Boykin, supra,* 395 U.S. 238, the United States Supreme Court determined that a defendant who pled guilty could attack the ensuing conviction on the ground the record did not affirmatively establish a knowing and intelligent waiver of certain constitutional rights— the right to a jury trial, the right to confront witnesses, and the privilege against self-incrimination. (*Id.* at pp. 243-244 [89 S.Ct. at pp. 1712-1713].) Just months later, the California Supreme Court addressed the same issue in *In re Tahl, supra,* 1 Cal.3d 122. Again, the defendant alleged his guilty plea was not made voluntarily or with a complete understanding of its consequences. The *Tahl* court, bound by *Boykin,* set forth the additional requirement that the record clearly state that the defendant specifically and expressly waived each of the three enumerated constitutional rights. (*Id.* at p. 132.) Both *Tahl* and *Boykin* involved direct challenges on an appeal from the contested conviction.

In *People v. Sumstine* (1984) 36 Cal.3d 909 [206 Cal.Rptr. 707, 687 P.2d 904] (*Sumstine*), the California Supreme Court considered whether a defendant, whose sentence was subject to enhancement by a prior conviction, was

permitted to attack collaterally the validity of that conviction on *Boykin/Tahl* grounds. The court answered affirmatively, deciding that a defendant could question a prior conviction on any constitutional ground, including a *Boykin/ Tahl* violation. "When a defendant has made allegations sufficient to justify a hearing, the court must conduct an evidentiary hearing in the fashion set forth in [*People* v.] *Coffey* [(1967) 67 Cal.2d 204 [60 Cal.Rptr. 457, 430 P.2d 15] (*Coffey*)]: '[T]he prosecutor shall first have the burden of producing evidence of the prior conviction sufficient to justify a finding that defendant "has suffered such previous conviction." (Pen. Code, § 1025.) . . . [W]hen this prima facie showing has been made, the defendant shall thereupon have the burden of producing evidence that his constitutional [*Boykin/Tahl* rights were] infringed in the prior proceeding at issue. . . . [I]f defendant bears this burden, the prosecution shall have the right to produce evidence in rebuttal.' . . ." (*Sumstine, supra,* 36 Cal.3d at p. 923.)

The application of *Boykin* to prior convictions under federal law arose in *Custis v. United States* (1994) 511 U.S. 485 [114 S.Ct. 1732, 128 L.Ed.2d 517] (*Custis*). There, Custis unsuccessfully challenged the validity of his prior state conviction on the ground he had been denied effective assistance of counsel. The court concluded that a defendant may not collaterally attack the validity of a prior conviction on any ground except a denial of the right to counsel under *Gideon v. Wainwright* (1963) 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733].

"We think that since the decision in *Johnson* v. *Zerbst* [(1938) 304 U.S. 458 [82 L.Ed.1461]] more than a half century ago, . . . there has been a theme that failure to appoint counsel for an indigent defendant was a unique constitutional defect. Custis attacks his previous convictions claiming the denial of the effective assistance of counsel, that his guilty plea was not knowing and intelligent, and that he had not been adequately advised of his rights in opting for a 'stipulated facts' trial. None of these alleged constitutional violations rises to the level of a jurisdictional defect resulting from the failure to appoint counsel at all. [Citation.]

"Ease of administration also supports the distinction. As revealed in a number of the cases cited in this opinion, failure to appoint counsel at all will generally appear from the judgment roll itself, or from an accompanying minute order. But determination of claims of ineffective assistance of counsel, and failure to assure that a guilty plea was voluntary, would require sentencing courts to rummage through frequently nonexistent or difficult to obtain state-court transcripts or records that may date from another era, and may come from any one of the 50 states.

"The interest in promoting the finality of judgments provides additional support for our constitutional conclusion. . . . [This principle] bear[s] extra

weight in cases in which the prior convictions, such as one challenged by Custis, are based on guilty pleas, because when a guilty plea is at issue, 'the concern with finality served by the limitation on collateral attack has special force.' [Citation.]" (*Custis, supra*, 511 U.S. at pp. 496-497 [114 S.Ct. at pp. 1738-1739].)

Thus, there is no right to collaterally challenge a prior conviction on federal constitutional grounds except in cases involving *Gideon* error.[2]

Three years later, in *Garcia v. Superior Court* (1997) 14 Cal.4th 953 [59 Cal.Rptr.2d 858, 928 P.2d 572] (*Garcia*), the California Supreme Court dealt with the same issue as a matter of state law. Like Custis, Garcia disputed his prior conviction because he claimed he had been denied effective assistance of counsel in the proceeding. The court rejected the argument, stating in relevant part that "[n]othing in the language of our state Constitution, or in our past decisions construing its provisions, presents a 'cogent reason' for us to reach an interpretation of our state constitutional requirements different from that under the federal Constitution, as determined in *Custis*." (*Id.* at p. 963.) The court distinguished *Sumstine* because it did not involve a challenge to a prior conviction based upon purported ineffective assistance of counsel. The court articulated a number of policy considerations to support its decision: "Such a claim [of ineffective assistance of counsel] often will necessitate a factual investigation with regard to counsel's actions, omissions, and strategic decisions, requiring the parties and the court to reconstruct events possibly remote in time, and to scour potentially voluminous records, substantially delaying the proceedings related to the current offense. . . ." (*Garcia, supra*, at p. 965.)

Many have argued that *Garcia* implicitly overruled *Sumstine*. Others have taken a contrary position. The Supreme Court's recent decision in *Allen* ended the debate. According to the *Allen* court, *Sumstine* ". . . permits a criminal defendant to challenge the validity, in his present trial, of a prior felony conviction on *Boykin-Tahl* grounds. Although to enhance a criminal defendant's sentence with a prior conviction that was itself obtained in violation of the Constitution is unconstitutional (*Burgett* v. *Texas* [(1967) 389 U.S. 109 [88 S.Ct. 258, 19 L.Ed.2d 319]]), it is not unconstitutional— with the exception of denial of counsel claims—to require a defendant to litigate the validity of the prior conviction in a separate proceeding, such as on habeas corpus. (*Custis, supra*, 511 U.S. at p. 497 [114 S.Ct. at p. 1739]; *Garcia, supra*, 14 Cal.4th at p. 966.) Our decision in *Sumstine* thus was not based on constitutional imperatives, but on the policy judgment, first announced in *Coffey, supra*, 67 Cal.2d 204, that 'it is clearly in the interest of

---

[2]For this reason, appellant's contention he has been denied equal protection under federal constitutional standards fails.

efficient judicial administration that attacks upon the constitutional basis of prior convictions be disposed of at the earliest possible opportunity, and we are therefore of the view that, if the issue is properly raised at or prior to trial, it must be determined by the trial court.' (*Id.* at p. 215, italics added.) We not only reaffirmed that policy decision in *Sumstine, supra,* 36 Cal. 3d at page 920, we again did so in *Curl* [*v. Superior Court* (1990) 51 Cal. 3d 1292, 1302 [276 Cal.Rptr. 49, 801 P.2d 292]].)" (*Allen, supra,* 21 Cal.4th at p. 435, italics omitted.)

Thus, the requirement of an express waiver of the enumerated constitutional rights established by *Tahl* and the procedure for proving an invalid prior conviction announced in *Sumstine* serve to encourage the earliest possible review of constitutional challenges and eliminate the need for lengthy evidentiary hearings, and their concomitant delays, during the trial of the current offense. (*Allen, supra,* 21 Cal.4th at pp. 429-430.) The premise in *Allen* is that, after November 7, 1969, the date *Tahl* was decided, evidence of a knowing and intelligent waiver of the identified constitutional rights will appear on the record in all California cases and the existence of such a record will eliminate the need for a protracted inquiry into the voluntariness of the plea on which the prior conviction rests. (*Allen,* at p. 438.) The expectation that evidence of the waivers will show on the record is an important element of the court's rationale, so much so that *Allen* limits the application of *Sumstine* to post-*Tahl* guilty pleas: "For pre-*Tahl* guilty pleas, we cannot expect the record clearly or succinctly to demonstrate whether or not the defendant was aware of his constitutional rights before pleading. For such cases, the determination of the voluntariness of the defendant's plea, untethered to anything in the existing record, would be an onerous task requiring resort to much evidence outside the trial record. The disruption of the trial caused by having to determine the voluntariness of a pre-*Tahl* guilty plea would be similar to that caused by having to determine whether prior counsel was constitutionally ineffective. As in *Garcia, supra,* 14 Cal.4th 953, we find that permitting defendants to raise challenges to pre-*Tahl* prior convictions will be judicially inefficient and will saddle the trial courts with an unreasonable burden. Accordingly, we conclude that motions to strike prior felony convictions on *Boykin-Tahl* grounds are limited to post-*Tahl* guilty pleas." (*Allen, supra,* 21 Cal.4th at p. 443.)

This case, obviously, cannot accurately be characterized as either pre- or post-*Tahl* because it involves a conviction in the state of Texas, a jurisdiction which has never been bound by the rule announced in *Tahl.* We therefore cannot expect evidence pertinent to the concerns addressed in *Tahl* to appear on the face of the Texas record. However, the absence of such a record does not establish conclusively that no advisements were given or that appellant's

waivers were involuntary or unknowing, realities appellant fails to appreciate. The absence of compliance with *Tahl* does not mean the prior conviction was procured in violation of federal constitutional standards; it means instead that reversal is required only if consideration of the total circumstances establishes constitutional error. (*Allen, supra,* 21 Cal.4th at p. 440; *People v. Howard* (1992) 1 Cal.4th 1132, 1174-1180 [5 Cal.Rptr.2d 268, 824 P.2d 1315].)[3]

Where does this leave this defendant? The question remains unanswered by the majority in *Allen.* However, application of the reasoning of the majority in *Allen,* read in light of the cases cited above, leads to what we believe is the correct result. We agree with Justice Baxter's view, in his concurring opinion in *Allen,* about prior *out-of-state* convictions. Justice Baxter states in pertinent part: "The majority acknowledge that the *Sumstine* rule, as applied to *Boykin-Tahl* issues, is tolerable only insofar as we can expect the record of the challenged prior guilty plea readily to show, on its face, that the defendant knew and waived his rights. For this reason, only priors governed by *Tahl*'s requirement of *express* admonitions and waivers may be the subject of a *Sumstine* motion. Just as this principle eliminates *Boykin-Tahl* challenges to *California* priors that predate *Tahl,* so must *Boykin-Tahl* challenges to *non-*California priors be excluded, except where it appears beyond doubt that the guilty pleas underlying such convictions were subject, under the law of the convicting jurisdictions, to *Tahl*-like procedural formalities." (*Allen, supra,* 21 Cal.4th at p. 447 (conc. opn. of Baxter, J., joined by Chin, J., and Brown, J.).)

We conclude that, in the absence of the expectation that the advisements and waivers of constitutional rights will appear on the face of the record, determination of the voluntariness of an out-of-state plea would be an onerous task and place an unreasonable burden on the trial courts.[4] Allowing a defendant to challenge a plea based on an out-of-state conviction not entered under *Tahl*-like protections is judicially inefficient and will saddle the California trial courts with obligations not required by either the federal or state constitutions. Consequently, a defendant may not collaterally attack

---

[3]Does this determination not require an evidentiary hearing of the sort declared "unduly burdensome" in *Allen?*

[4]In addition to the concerns of possible lengthy delays caused while evidence and witnesses are procured to prove the invalidity of a prior out-of-state conviction, it is obvious that, in order to evaluate the evidence presented, California trial courts will be required to acquaint themselves with the law of criminal procedure operative in any one of the other 49 states. This case provides a perfect example. Here the trial court was asked to consider Texas statutes and rules of procedure and the declaration of a Texas attorney about how these rules affected the proceedings leading to the prior conviction. In addition, the trial court was asked to draw certain inferences from the Texas jury's finding under a sentencing procedure which has no counterpart in California.

a prior out-of-state conviction unless there is evidence that *Tahl*-like requirements operated in the jurisdiction at the time of the plea.

We do not single out for different treatment those defendants such as appellant who seek to challenge out-of-state rather than California prior convictions. Our holding puts out-of-state prior convictions on a par with California prior convictions. Thus, if a *Tahl*-like policy of requiring preplea advisements and waivers on the record was in effect in the state court where the plea was taken, we will allow a collateral attack on the ensuing conviction. If no such policy operated at the time or place of the prior plea, in the interests of finality of judgments recognized in *Custis* and judicial efficiency, we will not allow collateral challenges to the subsequent conviction.

There is nothing in the record to indicate Texas required *Tahl*-like admonishments when appellant's plea was taken. Therefore, the trial court did not err in denying appellant's challenge to the constitutionality of his 1978 Texas conviction for murder.

DISPOSITION

The judgment is affirmed.

Harris, J., and Wiseman, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 20, 2000.